BLOOMINGTON TRANSMISSION SERVICES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13368-85, 39141-85.          Filed September 4, 1986.

*David J. Duez*, for the petitioner.
*David R. Reid*, for the respondent.

OPINION

GERBER, *Judge*: Respondent determined, by means of statutory notices dated February 14, 1985, and September 9, 1985, deficiencies in Federal income taxes and additions to tax for the taxable years ended November 30, 1979, 1980, 1981, and 1982. Petitioner, a corporation which had been dissolved by the Secretary of State of Illinois for failure to file annual reports and pay franchise tax, filed two timely petitions in response to respondent's notices. Respondent moved to dismiss both cases because of petitioner's lack of capacity to sue or be sued under Illinois law and to initiate or maintain a proceeding in this Court. The parties stipulated that petitioner was a de facto corporation under Illinois law at the time of filing its petitions.[1]

Petitioner was dissolved on December 1, 1977, and no action has been taken to reinstate retroactively its corporate status as a de jure corporation under the laws of the State of Illinois. Under chapter 32 of the Illinois Revised Statutes section 157.94 (effective July 1, 1933), petitioner was permitted 2 years from dissolution within which to commence the prosecution or defense of any actions or proceedings. Chapter 32 of the Illinois Revised Statutes was amended by section 12.80 (effective July 1, 1984) extending the period to 5 years instead of the 2 years originally permitted under section 157.94. Because the 5-year period would have run as of December 1, 1982, the 1984 change in

[1]The parties have also stipulated that "In Illinois, the requisite elements for the existence of a *de facto* corporation are a valid law under which it may be organized; colorable or apparent compliance with the law; and a user of corporate powers."

Illinois law would not have cured petitioner's apparent impediment in this case.

Respondent brought an action, during 1984, against petitioner and its president, Robert A. Perschall, to enforce an Internal Revenue Service summons seeking petitioner's records. The summons was issued in connection with respondent's investigation of Robert Perschall (Perschall). Perschall asserted his Fifth Amendment priviledge against self-incrimination and argued that the privilege extended to petitioner because it had been dissolved and the records were therefore of a "sole proprietorship." See *United States v. Doe,* 465 U.S. 605 (1984).

Chief Judge Baker, by an order entered May 20, 1985, found that petitioner was "estopped from denying a corporate existence, despite its statutory dissolution. * * * *United States v. Harrison,* 653 F.2d 359, 361-362 (8th Cir. 1981)." *United States v. Bloomington Transmission Services, Inc.,* No. 84-3335 (C.D. Ill., May 20, 1985). Among his factual findings, Chief Judge Baker found that: (1) Petitioner continued to maintain a bank account and issue checks in its corporate name; (2) Federal and State corporate tax returns were filed for 1979 through 1981; and (3) petitioner was generally held out to be a business "entity with 'an independent institutional identity.'" Accordingly, petitioner was not permitted to deny its corporate existence for purposes of a summons enforcement proceeding where its records were sought and the District Court permitted enforcement, in part, under the rationale of *Bellis v. United States,* 417 U.S. 85 (1974).

Petitioner argues that the District Court order established its status as a de facto corporation which, under Illinois law would have authority to maintain actions, including this proceeding pursuant to Rule 60(c).[2] Petitioner cites three Illinois cases for the proposition that a de facto corporation, under "Illinois common law," has the ability to maintain and defend legal proceedings. Respondent agrees that petitioner is a de facto corporation and that petitioner has a corporate existence for some purposes. Respondent, how-

---

[2]Unless otherwise indicated, all Rule references are to this Court's Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

ever, argues that petitioner does not have the capacity to initiate a legal action.

Rule 60(c) provides that a corporation's "capacity * * * to engage in * * * litigation [in this Court] shall be determined by the law under which it was organized." In the absence of notification by a fiduciary, section 6212(b)(1) permits respondent to issue a notice of deficiency to a corporation, even where its existence has been terminated. Furthermore, Illinois law would deny capacity to institute a legal proceeding to a corporation that failed to pay State franchise tax or file annual reports. *Padre Island Thunderbird, Inc. v. Commissioner*, 72 T.C. 391, 394-399 (1979); *Great Falls Bonding Agency, Inc. v. Commissioner*, 63 T.C. 304, 306-307 (1974). These facts present the seemingly anomalous situation where respondent may send a notice to a corporate taxpayer which may not exist or have capacity to petition this Court. *Padre Island Thunderbird, Inc. v. Commissioner*, *supra*; *Condo v. Commissioner*, 69 T.C. 149 (1977). We have considered this perceived anomaly and reasoned that even though we cannot consider the merits of respondent's determination, they may be questioned and litigated in a transferee liability proceeding if respondent looks to the assets in the hands of a former shareholder. *Great Falls Bonding Agency, Inc. v. Commissioner*, *supra* at 306-307. Our prior rationale, however, does not fully respond to petitioner's argument that prior cases have not presented the factual situation where, although dissolved, the corporate entity continues to operate and has assets which may be sufficient to satisfy the deficiency determined in respondent's notice. If a petition is dismissed for lack of a petitioner's capacity, respondent may assess the determined deficiencies. Thereafter, petitioner-corporation argues, it would not be able to defend itself from enforced collection of the assessed deficiencies because of its incapacity to sue under Illinois law.[3]

---

[3]Although petitioner's argument assumes that the corporate entity would be the subject matter of respondent's collection activity, there is case precedent which could mitigate against petitioner's concerns and produce the transferee factual setting contemplated in *Great Falls Bonding Agency, Inc. v. Commissioner*, 63 T.C. 304, 306-307 (1974). The dissolution of a corporation generally does not terminate the rights of stockholders, and the property of the corporation may become vested in the stockholders. *Levy v. Liebling*, 238 F.2d 505, 507 (7th Cir. 1956), cert. denied 353 U.S. 936 (1957). This is particularly true in a situation, as presented herein, where the corporation is owned and operated by a single shareholder.

Petitioner, in this regard, contends that it "acquired separate *de facto* status apart from the corporation, *de jure* recognition provided" under Illinois statutory law. Further, petitioner argues that the District Court has already determined that petitioner has a corporate de facto status.

Corporations are creatures of statute and their existence and capacity are dependent upon the State law under which they were created. *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518 (1819); *Chicago Title & Trust Co. v. Wilcox Bldg. Corp.*, 302 U.S. 120 (1937); *Chevron Oil Co. v. Clark*, 291 F. Supp. 552, 560-561 (S.D. Miss. 1968), affd. in part and revd. in part on other grounds 432 F.2d 280 (5th Cir. 1970) (applying Mississippi law). We have recognized that Illinois law effectively dissolves a corporation in violation of annual report and franchise tax payment requirements. Chapter 32 of the Illinois Revised Statutes section 157.82 (and its successor, section 12.35 of chapter 32 as enacted in Illinois Public Act 83-1025, effective July 1, 1984) permitted the secretary of state or attorney general of Illinois to dissolve judicially or administratively a corporation that has either failed to file its annual report or pay its franchise tax. Petitioner in this case was so dissolved for failing to file the report or pay the franchise tax.

In essence, chapter 32 of the Illinois Revised Statutes section 12.80 (effective July 1, 1984), and its predecessor section (chapter 32, section 157.94) provide for a 2- or 5-year period within which to reinstate corporate status by curing defects or otherwise to wind up its affairs (including the institution of a legal proceeding). These statutes place a clear and unambiguous limit upon a corporation's capacity and ability to institute or maintain a civil action in the State of Illinois unless the corporate status is restored by the remedy provided. To the extent discernable from the facts recited in our prior opinions, all of the taxpayer-corporations were either within the "winding-up period" or inactive and without assets from which respondent could collect the assessment attendant upon dismissal for lack of jurisdiction. Petitioner contends that the factual distinction of this case should provide a basis for us to consider it a de

facto corporation with capacity to maintain this proceeding. We do not agree.

State statutes which provide a limited period to wind up following dissolution represent a valid and constitutional exercise of legislative power. *Chicago Title & Trust Co. v. Wilcox Bldg. Corp.*, *supra*. After the expiration of the time allowed for the winding up of a dissolved corporation, it generally cannot sue or be sued at law. *Levy v. Liebling*, 238 F.2d 505 (7th Cir. 1956), cert. denied 353 U.S. 936 (1957). Generally, a dissolved corporation will not be considered a de facto corporation, for corporation de facto status assumes or implies the ability to become a corporation de jure. *Clark v. American Cannel Coal Co.*, 165 Ind. 213, 73 N.E. 1083, 1084 (1905); *Rogers v. Toccoa Power Co.*, 161 Ga. 524, 131 S.E. 517, 520-522 (1926); 19 Am. Jur. 2d 664, sec. 2885 (1986). There is limited authority holding that a corporation which has lost its de jure status may, during its winding-up period, be both de jure and de facto. *Garzo v. Maid of the Mist Steamboat Co.*, 303 N.Y. 516, 104 N.E. 2d 882, 886-887 (1952). In *Garzo*, the court specifically qualifies its holding to the extent that the de facto status may not be questioned by anyone other than the State. This reasoning comports with the more general principle that the State may legislate the terms of corporate existence. To find in this case that petitioner had the capacity to sue beyond the statutory period for winding up following dissolution would frustrate, undermine, and ignore the authority of the State of Illinois to legislate and regulate the existence of a corporate entity.

We recognize that our holding will leave petitioner in the anomalous position of being unable to defend against the determination, assessment, and possibly the collection of Federal tax. It was, however, petitioner's shareholder-officer's failure to file annual reports or pay franchise tax, or to cure the defects during either the 2- or 5-year "winding-up period." Moreover, petitioner was operated beyond the clear legislative limit of its existence without

statutory authority or color of corporate existence due to its inability to acquire again a de jure existence.[4]

Our holding is not inconsistent with the District Court's order estopping petitioner from denying corporate existence for purposes of a summons enforcement action seeking corporate records. The District Court has properly denied petitioner's attempt to use its failure to comply with State law to thwart the rights of others to whom petitioner was held out as a corporation.[5]

In view of the foregoing, we find, under the law of the State of Illinois, petitioner is without capacity to petition this Court for a redetermination of the two statutory notices of deficiency respondent issued. Respondent's motions to dismiss for lack of jurisdiction will be granted.

To reflect the foregoing,

*Appropriate orders will be entered.*

[4]The parties' stipulation that petitioner is a de facto corporation under Illinois law is recognized for purposes of this case. Our holding is limited to petitioner's capacity to petition this Court. We make no findings with respect to petitioner's status for any other purpose.

[5]Petitioner has argued both that it exists and does not exist, depending upon which position is most advantageous at the time. Being estopped from using petitioner's impaired status to its own advantage or to the detriment of others is not the same as a determination that petitioner was a de facto corporation for all purposes, including capacity to sue.